UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF MISSISSIPPI
ABERDEEN DIVISION

JAMES "JIMMY" EMMETT EDWARDS                                    PLAINTIFF

V.                                    CIVIL ACTION NO. 1:22-CV-145-KHJ-MTP

GUARDIAN LIFE INSURANCE OF AMERICA                         DEFENDANT

ORDER

Before the Court is Defendant Guardian Life Insurance of America's ("Guardian") [12] Motion for Partial Summary Judgment and [23] Motion to Strike; and Plaintiff James "Jimmy" Emmett Edwards's ("Mr. Edwards") [29] Motion for Leave to File Surrebuttal Brief and [30] Motion to Take Depositions. For the following reasons, the Court grants Guardian's Motion for Partial Summary Judgment, grants in part and denies in part its Motion to Strike, and denies Mr. Edwards's motions.

I.      Background

This case arises from Guardian canceling decedent Pam Edwards's life insurance policy. Compl. [1] ¶¶ 4, 13. Until her death, Mrs. Edwards owned and operated Allure Salon in Starkville, Mississippi. Edwards Aff. [17-1] at 1. Mrs. Edwards worked with other beauty technicians, but the parties dispute whether they were employees or independent contractors. *E.g.*, [13] at 1; [18] at 3.

In December 2007, Mrs. Edwards bought a life insurance policy from

Attorney Debbie Jaudon. Jaudon Aff. [17-2] at 1. Her application for insurance listed the plan-holder as Allure Salon and represented that she had four full-time employees intended to be insured. *See* [12-1] at 5. When Guardian notified her that it had approved coverage, it said "Allure Salon . . . has been approved with the effective date of [December 15, 2007]." [12-2] at 6. Allure then paid all monthly premiums and maintained the insurance plan until Guardian terminated the coverage. Wiltrout Aff. [12-1] ¶ 9.

Mrs. Edwards was diagnosed with cancer in 2019, and her physical and mental condition declined until her death in 2022. *See* [17-1] at 2–3. During that time, Guardian sent two letters to Allure with Mrs. Edwards's name on the address. *See* [1-1]; [1-2]. The first was a pre-notification letter dated October 28, 2021, notifying her that Guardian had to cancel her coverage effective January 1, 2022, because "[her] company ha[d] fallen below the required participation level." [1-1]. The second letter notified her that Guardian canceled the coverage effective January 15, 2022. [1-2].

When Mrs. Edwards died, Jaudon told Mr. Edwards that his wife had an $85,000.00 insurance policy. *Id.* at 2. Mr. Edwards had never heard about the life insurance policy, and he could not find documentation of it after Mrs. Edwards's death. *See* [17-1] at 2–3. When Jaudon contacted Guardian to make a claim, Guardian told Jaudon it had canceled the policy. [17-2] at 2. She then told Mr. Edwards that Guardian was claiming the policy had been canceled, but she did not

2

believe them because she never received a copy of the notice of cancelation. *Id.* Jaudon further claims she did not receive the two letters from Guardian until after Mrs. Edwards's death. [17-1] at 3; [17-2] at 2.

Mr. Edwards filed this action on October 4, 2022, alleging Guardian did not give sufficient notice of cancellation and acted in bad faith by not disclosing the reasons for the canceled policy until after Mrs. Edwards's death. *See* [1] ¶ 9. He seeks $85,000.00 based on the "face amount of the coverage," punitive damages, and attorneys' fees and costs. *Id.* at 4. Guardian moves for partial summary judgment on the issue of whether the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001, governs this action and preempts any state-law claims. [13] at 1. It argues ERISA does apply, and the only claim that should move forward is Mr. Edwards's claim for benefits under ERISA, 28 U.S.C. § 1132(a)(1). *Id.*; [1] ¶ 12.

Mr. Edwards attached two affidavits with his Response: Jaudon's and his own. *See* [17-1]; [17-2]. Guardian moves to strike certain portions of those affidavits for lack of personal knowledge, speculation, or hearsay. *See* [24] at 2–5. Because Mr. Edwards's argument partially relies on that evidence, the Court considers the Motion to Strike before the Motion for Partial Summary Judgment.

II.  Motion to Strike

A.  Standard

"An affidavit or declaration used to support or oppose a motion [for summary

3

judgment] must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4). The same rules governing admissibility of evidence at trial apply to summary judgment. *See Paz v. Brush Eng'd Materials, Inc.*, 555 F.3d 383, 387–88 (5th Cir. 2009) (citation omitted). A "party objecting to the admission of [an] affidavit . . . bears the burden of proving the preliminary facts required to show its inadmissibility." *Fick v. Exxon Mobil Corp.*, No. 13-6608, 2016 WL 81716, at *3 (E.D. La. Jan. 7, 2016) (citing *Lyondell Chem. Co. v. Occidental Chem. Corp.*, 608 F.3d 284, 295 (5th Cir. 2010)). The Court has broad discretion in its admissibility determinations. *Paz*, 555 F.3d at 387 (citation omitted).

B.     Analysis

1.     Jaudon Affidavit

Guardian first argues the Court should exclude two of Jaudon's statements because they show her lack of personal knowledge on the facts asserted in the statements:

- "I do not know whether [the salon technicians] were employees or . . . independent contractors operating their own business." [17-2] at 1.

- "I do not know whether Guardian ever sent [Mrs. Edwards] a copy of the policy or any other documents." *Id.* at 2.

[24] at 2, 3. Edwards does not respond to Guardian's objection to the first statement, and neither party offers any authority on whether an affiant can say they "do not know" whether a fact is true. Instead, Guardian only says in passing that Jaudon admits her lack of personal knowledge about the two statements. Because Guardian does not meet its burden of proving those statements' inadmissibility, the Court denies its Motion to Strike as to those statements.

Guardian next seeks to strike three statements as either hearsay or "negative hearsay":

- "I remember Pam Edwards telling me that she wanted to be sure that she had something to leave her husband, Jimmy Edwards, and that she wanted to have life insurance on her daughter . . . ." [17-2] at 1.

- "I never told Pam Edwards that she was a 'plan administrator,' [or] . . . that she had any duties to perform as a plan administrator." *Id.*

- "I told [Edwards] that [Mrs. Edwards] had insurance." *Id.* at 2.

*See* [24] at 2–4. Edwards argues the first statement constitutes Jaudon's then-existing state of mind which excludes it from the definition of hearsay. [28] at 2 (citing Fed. R. Evid. 803(3)). To the second and third objections, Edwards argues "[w]hat Jaudon did not tell Pam Edwards is not a statement at all." *Id.* at 2–3 (emphasis omitted).

For the first statement, Edwards's state-of-mind argument fails. Rule 803(3) specifically does "not includ[e] a statement of *memory* or belief to prove the fact

*remembered* or believed unless it relates to the validity or terms of the declarant's will." Fed. R. Evid. 803(3) (emphasis added). Jaudon's statement that she remembered what Mrs. Edwards told her about the life insurance policy is one of memory, and it does not concern the validity of a will. *See* [17-2] at 1. Guardian is correct that the statement is hearsay, and the Court grants the Motion to Strike as to that statement.

The second and third statements' admissibility turns on whether Guardian's negative-hearsay theory is valid. Guardian offers no federal authority on that theory and instead relies on two state supreme court cases. *See* [24] at 3 (citing *Smith v. Korn Indus., Inc.*, 262 S.E.2d 27, 27 (S.C. 1980); *Gremmert v. Minnie*, 362 P.2d 855, 858 (Mont. 1961)). Neither are binding on this Court, and both fail to support Guardian's argument legally and factually. First, *Smith* relied on other states' authority, *see* 262 S.E.2d at 27–28, and *Gremmert* cited none, *see* 362 P.2d at 858. Second, both cases involved testimony to whether someone other than the witness made a statement. *See Smith*, 262 S.E.2d at 27–28 (holding plaintiff's friend could not testify that "he had never heard [the plaintiff] complain of any injury prior to subject collision in personal-injury action); *Gremmert*, 362 P.2d at 855–58 (holding plaintiff could not testify to what decedent did not say).

Here, Jaudon's statements are concern what she herself did not say. Specifically, Jaudon said she did not tell Mrs. Edwards that she was a plan administrator or tell Mr. Edwards that Mrs. Edwards had life insurance. The Court

6

is unaware of any "negative hearsay" theory that precludes such testimony, and

Guardian fails to meet its burden of proving those statements are inadmissible. The

Court denies Guardian's Motion to Strike with respect to those statements.

Finally, Guardian moves to strike two statements as speculative:

- "I do not believe any insurance company would have sold [Mrs. Edwards] a policy after her serious cancer diagnosis . . . ." [17-2] at 2.

- "I do not believe [Mrs.] Edwards received notice" of cancellation. *Id.*

Guardian is correct that Edwards cannot rely on those statements. "[F]acts

alleged on 'understanding,' like those based on 'belief' or on 'information and belief,'

are not sufficient to create a genuine issue of fact." *Thomas v. Atmos Energy Corp.*,

223 F. App'x 369, 375 (5th Cir. 2007) (per curiam) (quoting *Cermetek, Inc. v. Butler

Avpak, Inc.*, 573 F.3d 1370, 1377 (9th Cir. 1978)) (affirming district court's exclusion

of affiant's statement that his "understanding" was that two individuals were

co-supervisors). Because Jaudon's statements about her "belief" cannot create a fact

question, the Court grants Guardian's Motion to Strike those statements.

### 2. Edwards Affidavit

Next, Guardian argues the Court should exclude Mr. Edwards's "conclusory

statement that Mrs. Edwards had no employees and that her workers were

independent contractors." [24] at 4. Specifically, Guardian argues the following

language shows his lack of personal knowledge as to whether Allure's technicians were independent contractors:

> ". . . I never looked at the bank statements at all. [Mrs.] Edwards dealt exclusively with the bank account. I never knew what money was going into or out of the bank account, other than [Mrs.] Edwards was paying the contractors from the bank account . . . I never knew that she had purchased any life insurance policy."

[17-1] at 2. The Court declines to strike those statements for reasons similar to why it declined to exclude Jaudon's statements for lack of personal knowledge. Because Guardian cites no authority on whether an affiant can testify to what they do not know, it fails to meet its burden of proving the inadmissibility of those statements.

Guardian also argues the following language constitutes hearsay:

> "Jaudon . . . informed me after [Mrs.] Edwards's death that she had a life insurance policy . . . of $85,000. At a later date, Debbie Jaudon informed me that the insurance company was claiming that the policy had been cancelled. Debbie Jaudon informed me, however, that she did not believe it had been cancelled, because she . . . did not receive any copy of any notice of cancellation . . . Debbie Jaudon [also] informed me that she received [the letters notifying Mrs. Edwards of her policy cancellation] only after the death of [Mrs.] Edwards."

[17-1] at 2–3. None of those statements concern whether the Guardian-issued life insurance policy falls under ERISA—specifically here, whether Mrs. Edwards had employees or independent contractors. In other words, Mr. Edwards did not offer those statements to prove any facts relevant to Guardian's Motion for Partial Summary Judgment. Even if the statements did constitute hearsay, the Court did

not consider those statements in its summary-judgment analysis. For those reasons, the Court declines to strike those statements for purposes of Guardian's Motion for Partial Summary Judgment.

C.    Conclusion

The Court grants in part and denies in part Guardian's [23] Motion to Strike. The Court strikes from the record those statements about Jaudon's beliefs and memory, and it will not consider them for purposes of Guardian's [12] Motion for Partial Summary Judgment. The Court denies the Motion to Strike as to the remaining objections, including Jaudon's lack of personal knowledge, negative hearsay, and all objections to Mr. Edwards's Affidavit. With that in mind, the Court turns to Guardian's Motion for Partial Summary Judgment.

III.    Motion for Partial Summary Judgment

A.    Standard

Summary judgment is appropriate if the movant shows "no genuine dispute as to any material fact" exists, and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). "A fact is 'material' if, under the applicable substantive law, 'its resolution could affect the outcome of the action.'" *Patel v. Tex. Tech Univ.*, 941 F.3d 743, 747 (5th Cir. 2019) (quoting *Sierra Club, Inc. v. Sandy Creek Energy Assocs., L.P.*, 627 F.3d 134, 138 (5th Cir. 2010)). A dispute is "genuine" if the evidence demonstrates that a "reasonable [factfinder] could return a verdict for the nonmoving party.'" *Jones v. United States*, 936 F.3d 318, 321 (5th Cir. 2019)

9

(quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). The Court

views all facts, evidence, and reasonable inferences in the non-movant's favor. *Scott*

*v. Harris*, 550 U.S. 372, 378 (2007).

If the non-movant bears the burden of proof at trial, the movant need only

demonstrate the record lacks evidentiary support for the non-movant's claim. *Bayle*

*v. Allstate Ins. Co.*, 615 F.3d 350, 355 (5th Cir. 2010). The movant must "cit[e] to

particular parts of materials in the record" or "show[] that the materials cited do not

establish the absence or presence of a genuine dispute, or that [the] adverse party

cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1). The

moving party need not "present evidence proving the absence of a material fact

issue . . . [but] may meet its burden by simply pointing to an absence of evidence to

support the nonmoving party's case." *Boudreaux v. Swift Trans. Co.*, 402 F.3d 536,

544 (5th Cir. 2005) (citation omitted). But "unsubstantiated assertions are not

competent summary judgment evidence." *Ragas v. Tenn. Gas Pipeline Co.*, 136 F.3d

455, 458 (5th Cir. 1998).

If the movant meets its burden, "the burden shifts to the non-movant to

produce evidence of the existence of such an issue for trial." *Bayle*, 615 F.3d at 355

(quotation omitted). The non-movant must present more than "speculation,

improbable inferences, or unsubstantiated assertions." *Jones*, 936 F.3d at 321

(citation omitted). The nonmovant's failure "to offer proof concerning an essential

element of its case necessarily renders all other facts immaterial and mandates a

10

finding that no genuine issue of fact exists." *Adams v. Travelers Indem. Co. of Conn.*, 465 F.3d 156, 164 (5th Cir. 2006) (citation omitted). Notably, "Rule 56 does not impose upon the district court a duty to sift through the record in search of evidence to support a party's opposition to summary judgment." *Ragas*, 136 F.3d at 458.

B.    Analysis

Guardian argues Mrs. Edwards's life insurance policy is an employee-benefit plan subject to ERISA, and ERISA preempts Edwards's state-law breach-of-contract claim. *See* [13] at 3–10. Edwards argues fact questions exist as to whether the plan benefitted "employees." [18] at 3.[1]

ERISA applies to "any employee[-]benefit plan if it is established or maintained by any employer engaged in commerce or in any industry or activity affecting commerce . . . ." 29 U.S.C. § 1003(a)(1). If ERISA applies, it "preempts state laws insofar as they . . . relate to any employee[-]benefit plan," unless an exception applies. *Ellis v. Liberty Life Assur. Co. of Bos.*, 394 F.3d 262, 275 (5th Cir.

---

[1]    Edwards also argues a fact question exists as to whether Mrs. Edwards received the cancellation notice. *See* [18] at 3. But receipt of a cancellation notice is irrelevant to whether an employee-benefit plan exists. *See House v. Am. United Life Ins. Co.*, 499 F.3d 443, 448 (5th Cir. 2007) (recognizing the "establishment or maintenance [of a plan] by an employer intending to benefit employees" as the "primary elements of an ERISA employee benefit plan . . . ."). If an employee-benefit plan exists, allegations about lack of a cancellation notice relate to benefit administration, and ERISA preempts such claims. *See, e.g., Parkman v. Prudential Ins. Co.*, 439 F.3d 767, 771–72 (8th Cir. 2006) (holding ERISA preempted state-law fraud action based on insurer's alleged mishandling of benefit claim because action related to benefit administration). If no employee-benefit plan exists, then ERISA does not preempt such claims. *Id.*

2004) (quotation omitted). To determine whether an insurance policy is an employee-benefit plan, the Fifth Circuit asks whether a plan: "(1) exists; (2) falls within the safe-harbor provision established by the Department of Labor; and (3) satisfies the primary elements of an ERISA employee[-]benefit plan—establishment or maintenance by an employer intending to benefit employees." *House v. Am. United Life Ins. Co.*, 499 F.3d 443, 448 (5th Cir. 2007) (citing *Meredith v. Time Ins. Co.*, 980 F.2d 352, 355 (5th Cir. 1993)). The Court addresses each element in turn.

### 1. Existence

Whether a plan exists turns on "whether . . . a reasonable person could ascertain the intended benefits, beneficiaries, source of financing, and procedures for receiving benefits." *Meadows ex rel. Meadows v. Unum Grp. Corp.*, 2:17-CV-214, 2018 WL 3015253, at *2 (S.D. Miss. June 15, 2018) (quoting *Meredith*, 980 F.2d at 355). That is generally a question of fact. *House*, 499 F.3d at 448 (citation omitted). But "where the factual circumstances are established as a matter of law or undisputed, [the Fifth Circuit] has treated the question as one of law . . . ." *Id.* For example, in *House*, the parties did not dispute that "an intentional benefit plan existed at the firm." *Id.* at 449. In those cases, courts generally move straight to the safe-harbor-provision element. *See id.*

Edwards makes two existence arguments: (1) Allure did not have "employees" other than Mrs. Edwards because Allure's technicians were independent contractors, and (2) the life insurance policy itself cannot be an ERISA plan. *See*

12

[18] at 5–6, 12. The Court addresses each argument in turn.

a. Employees v. Independent Contractors

Edwards relies on *Raymond B. Yates, M.D., P.C. Profit Sharing Plan v. Hendon*, 541 U.S. 1 (2004), for the principle that an employee-benefit plan cannot exist if an employer does not have employees other than the owner. *Id.* In *Hendon*, whether the employer had at least one employee other than the owner was a condition of whether the owner could participate in an ERISA-covered pension plan, not whether the plan existed. *See id.* But *Hendon* does hold that "[p]lans that cover only sole owners or partners and their spouses . . . fall outside [ERISA]'s domain." 541 U.S. at 21. And the Fifth Circuit has clarified that whether a plan has employees "appli[es] to the determination of the existence of an employee[-benefit] plan." *House*, 499 F.3d at 450. It follows that an employee-benefit plan existed if the life insurance policy benefitted at least one employee other than Mrs. Edwards.

With that in mind, the Court must decide whether Allure's technicians were employees or independent contractors. Because ERISA "offers little guidance in providing a definition of employee," the Fifth Circuit has turned to common-law agency rules to determine whether an employee is an independent contractor. *Penn v. Howe-Baker Eng'rs, Inc.*, 898 F.2d 1096, 1102 n.6 (5th Cir. 1990); *see also Landry v. Ga. Gulf Corp.*, 91 F. App'x 950, 951–52 (5th Cir. 2004) (noting plaintiff-employees must establish common-law employee status to receive benefits). The Fifth Circuit uses the factors set forth in *Nationwide Mutual*

13

*Insurance Co. v. Darden*, 503 U.S. 318 (1992), to determine whether an employee is an independent contractor. *Landry*, 91 F. App'x at 952. Those factors include:

> the skill required; the source of the instrumentalities and tools; the location of the work; the duration of the relationship between the parties; whether the hiring party has the right to assign additional projects to the hired party; the extent of the hired party's discretion over when and how long to work; the method of payment; the hired party's role in hiring and paying assistants; whether the work is part of the regular business of the hiring party; whether the hiring party is in business; the provision of employee benefits; and the tax treatment of the hired party.

503 U.S. at 323–24 (quoting *Cmty. for Creative Non-Violence v. Reid*, 490 U.S. 730, 751–52 (1989)). Courts also consider "the hiring party's right to control the manner and means by which the product is accomplished." *Id.* at 323 (quoting *Reid*, 490 U.S. at 751–52).

Neither party analyzed those factors in their initial briefing—Guardian first mentions them in its Reply, *see* [26] at 5–7—and the record lacks sufficient evidence to analyze them all. The available evidence, though, does establish facts that indicate Allure's technicians were employees: (1) Mrs. Edwards owned Allure's "building and . . . all of the equipment in the building," [17-1] at 1–2; (2) she received all payments from customers then paid each technician a percentage of the income that technician had generated, *id.* at 2; and (3) she set the hours of operation for Allure rather than the technicians setting their own hours, *see* [25-3] at 12. In other words, Mrs. Edwards controlled the "manner and means by which [Allure's

14

services are] accomplished." *See Darden*, 503 U.S. at 323–24. And notably, no evidence indicates the technicians worked for any other salon. *Cf. Hernandez v. Trendy Collections, LLC*, No. 3:17-CV-2049, 2018 WL 4103723, at *15 (N.D. Tex. Aug. 29, 2018) (citing *Thibault v. Bellsouth Telecomms., Inc.*, 612 F.3d 843, 846 (5th Cir. 2010)) (noting "[t]he Fifth Circuit has generally found that an individual who does not work exclusively for an employer is an independent contractor" in context of Fair Labor Standards Act). Applying the *Darden* factors to the available evidence, Allure had employees rather than independent contractors.[2]

b.   Life-Insurance Policy as an ERISA Plan

Edwards also argues a life insurance policy itself cannot be an ERISA plan. [18] at 12. The Fifth Circuit has already rejected that argument, recognizing the "common practice [of] employers to provide health care benefits to their employees through the purchase of a group health insurance policy . . . ." *See Mem'l Hosp. Sys. v. Northbrook Life Ins. Co.*, 904 F.2d 236, 240 (5th Cir. 1990) (citing *Metro. Life Ins.*

---

[2] This conclusion disposes of both Edwards's [29] Motion for Leave to File Sur-Reply and his [30] Motion to Take Depositions. First, because the Court determines Allure had employees based on the evidence, it does not reach Guardian's equitable-estoppel argument. *See* [26] at 2–4. No sur-reply is necessary, so the Court denies Edwards's [29] Motion for Leave to file Sur-Reply.

Second, "Rule 56(f) authorizes a district court to 'order a continuance to permit . . . depositions to be taken . . . .'" *Fannie Mae v. Self*, 667 F. App'x 463, 465 (5th Cir. 2016) (quoting Fed. R. Civ. P. 56(f)). The Court has "broad discretion" to do so. *Id.* (quoting *Beattie v. Madison Cnty. Sch. Dist.*, 254 F.3d 595, 606 (5th Cir. 2001)). Edwards believes the Court needs the depositions of Allure's technicians to determine whether they are independent contractors or employees. *See* [30-1]. But the facts establishing that they were employees come from Edwards's own Affidavit, *see* [17-1] at 1–2, and Allure's publicly available website, *see* [25-3] at 12. For those reasons, the Court also denies Edwards's [30] Motion to Take Depositions.

*Co. v. Massachusetts*, 471 U.S. 724, 727 (1985)).[3] Instead, it adopted the Eleventh Circuit's test for whether an insurance policy is an ERISA plan—"[a] formal document designated as '[an ERISA Plan]' is not required" if, "from the surrounding circumstances[,] a reasonable person can ascertain the intended benefits, a class of beneficiaries, the source of financing, and procedures for receiving benefits." *Id.* (citing *Donovan v. Dillingham*, 688 F.2d 1367, 1373 (11th Cir. 1982) (en banc)).

The circumstances show that the Guardian-issued life insurance policy is an ERISA plan. First, the policy expressly labeled its intended benefits as "*Employee* Group Term Life Insurance" and "*Employee* Basic Accidental Death and Dismemberment Benefits." *See* [12-1] at 32, 39 (emphasis added). Second, Mrs. Edwards's application listed Allure as the plan-holder and identified the class of beneficiaries as "all full[-]time" employees, not independent contractors. [12-1] at 5, 7. Where the application asked how many full-time employees Allure had and intended to insure, Mrs. Edwards filled in both blanks with "4." *Id.* at 5. Allure was the source of financing for the policy because Mrs. Edwards selected non-contributory insurance for employees and paid 100% of the premiums out of Allure's account. *See* [12-1] at 2, 6. Finally, the policy details the employees' eligibility, coverage, and right to make a claim. *See* [12-1] at 26, 28.

---

[3] Most other federal circuits agree. *See Minerley v. Aetna, Inc.*, 801 F. App'x 861, 865 (3rd Cir. 2020) (collecting cases from other federal circuits holding an insurance policy may be an ERISA plan).

Based on the evidence that Allure's technicians were employees rather than independent contractors, and the terms of the policy benefitting those employees, an ERISA plan existed in Mrs. Edwards's insurance policy. Edwards fails to provide sufficient evidence to the contrary, so the Court moves to the safe-harbor-provision element.

### 2. Safe Harbor

Because the life insurance policy qualifies as an ERISA plan, the next question is whether the plan "falls within the safe-harbor provision established by the Department of Labor." *See House*, 499 F.3d at 448. Guardian argues it does not satisfy the necessary factors to fall within that regulation. [13] at 5–6; *see* 29 C.F.R. § 2510.3–1(j). Edwards does not mention the safe-harbor regulation aside from a statement in its Reply to Guardian's Motion to Strike, in which he appears to argue ERISA's law-regulating-insurance exception applies to Mrs. Edwards's life insurance policy. *See* [28] at 1–2 ("although there is contrary authority, the better view is that the insurer also has the burden of proving that the case is not within the safe harbor[—]law regulating insurance[—]exception to ERISA."). The Court will address that exception after it determines whether the life insurance policy falls within the Department of Labor's safe-harbor provision.

"[T]o qualify as an ERISA plan, the plan cannot fall within the Department of Labor's safe harbor exclusion." *House*, 499 F.3d at 449. The safe-harbor provision applies to a plan that satisfies four criteria: "(1) the employer does not contribute to

17

the plan; (2) participation is voluntary; (3) the employer's role is limited to collecting premiums and remitting them to the insurer; and (4) the employer receives no profit from the plan." *Id.* (citing 29 C.F.R. § 2510.3-1(j)).

The Guardian-issued life insurance policy stops at the first criteria because Allure paid 100% of the policy's premiums. *See* [12-1] at 2, 6. The safe-harbor provision does not apply to the life insurance policy, and the Court need not address the remaining elements. *See Bennett v. Libbey Glass, Inc.*, No. 15-105, 2015 WL 5794523, at *4 (W.D. La. Sept. 30, 2015) (citing *Meredith*, 980 F.2d at 355) (concluding safe-harbor provision did not apply to employer-funded ERISA plan and declining to address remaining elements).

### 3. Primary Elements

Finally, the Court must determine whether the insurance policy "satisfies the primary elements of an ERISA employee[-]benefit plan—establishment or maintenance by an employer intending to benefit employees." *See House*, 499 F.3d at 448. Guardian argues Allure meets that standard. *See* [13] at 7–9. Edwards does not specifically address that standard but instead relies on his argument that Allure had independent contractors rather than employees. *See* [18] at 4–6.

"The final prong of the *Meredith* test is satisfied when (1) an employer established or maintained the plan; and (2) the employer intended to provide benefits to its employees." *Bennett*, 2015 WL 5794523, at *4 (citing *Meredith*, 980 F.2d at 355). The first element is self-explanatory; the second element has nuances

18

when the owner is an employee-beneficiary. *See House*, 499 F.3d at 450 (citing cases and discussing whether ERISA applies to a plan that benefits a working owner). But "a plan covering both working-owner employers . . . as well as [other] employees is governed by ERISA." *Id.* (citing *Hendon*, 541 U.S. at 16–17).

Guardian's policy meets the third *Meredith* prong. Allure established and maintained the policy because Mrs. Edwards identified Allure as the plan-holder, and Allure paid 100% of the premiums. *See* [12-1] at 2, 5–7. The policy also identified the class of beneficiaries as "all full[-]time" employees and specifically listed four employees to benefit from the plan. *Id.* at 5, 7. The policy may have benefitted Mrs. Edwards, but the addition of at least one other employee rendered it "a plan covering both [a] working-owner employer[ ] . . . as well as employees." *See House*, 499 F.3d at 450. ERISA covers such plans. *See id.*

Because Guardian's insurance policy meets the *Meredith* test, the policy falls under ERISA. The Court turns to whether ERISA preempts any state-law claims related to the plan, which turns on whether an exception applies. The only exception Mr. Edwards relies on is the law-regulating-insurance exception.

### 4.  Law-Regulating-Insurance Exception

ERISA has a "deliberately expansive" preemption clause. *N. Cypress Med. Ctr. Op. Co., Ltd. v. Cigna Healthcare*, 781 F.3d 182, 198 (5th Cir. 2015) (quoting *Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 46 (1987)). But "the statute contains a savings clause providing that 'nothing . . . exempt[s] . . . any person from any law of

any [s]tate which regulates insurance, banking, or securities." *Id.* (quoting 29 U.S.C. § 1144(b)(2)(A)). Edwards's Complaint alleges Mississippi's common law prohibiting cancellation of an insurance policy after the insured becomes uninsurable is a law regulating insurance. [1] ¶ 11. He then argues § 1144(b)(2)(A)'s law-regulating-insurance exception applies to Guardian's policy. *See* [28] at 1–2 (conflating law-regulating-insurance exception with Department of Labor's safe-harbor provision under *Meredith* test). To clarify, the question is not whether the policy falls under the law-regulating-insurance exception; it is whether the state statutes giving rise to the plaintiff's state-law claims fall under that exception. *See Cigna*, 781 F.3d at 198 (reviewing dismissal of plaintiff's claims under Texas Insurance Code sections by determining whether those sections constituted laws regulating insurance).

The law Edwards relies on comes from *Gulf Guaranty Life Insurance Co. v. Kelley*, 389 So. 2d 920 (Miss. 1980). In *Kelley*, the Mississippi Supreme Court held that an insurance company could not cancel a policy "after the onset of [the insured's] fatal illness." 389 So. 2d at 922. Specifically, an insurance company had canceled the insured's policy after he suffered a heart attack and died six days later. *See id.* at 921. Even though no one knew whether the heart attack would be fatal on the day the insurance company canceled the policy, the Mississippi Supreme Court found that allowing cancellation of a policy under similar circumstances would be unconscionable. *See id.* at 922.

20

A "law which regulates insurance . . . must (1) be directed toward entities engaged in insurance, and (2) substantially affect the risk pooling arrangement between the insurer and the insured." *Ellis*, 394 F.3d at 276 (citing *Ky. Ass'n of Health Plans, Inc. v. Miller,* 538 U.S. 329, 341–42 (2003)). The Fifth Circuit takes a "common-sense view of [the first element] and look[s] to whether the [law] is specifically directed toward entities engaged in insurance." *Cigna*, 781 F.3d at 198 (citing *Miller*, 538 U.S. at 342).

Edwards cannot rely on *Kelley* as a law regulating insurance for two reasons. First, *Kelley* effectively created a breach-of-contract claim where an insurer cancels a policy "after the onset of [a] fatal illness." *See* 389 So. 2d at 922. The Mississippi Supreme Court noted that allowing an insurer to cancel a policy after the insured became uninsurable would be unconscionable. *See id.* In doing so, it recognized the constitutional protection of the Contract Clause. *Id.* (citing U.S. Const. art. I § 10).

Despite Edwards's assertion that he "is not relying upon Mississippi general contract law," his Complaint expressly characterizes his state-law claim as "breach of an insurance contract." [1] at 1. And "laws of general application that have some bearing on insurers do not qualify" as a law "specifically directed toward" the insurance industry. *Miller*, 538 U.S. at 334; *see also Muldoon v. F.D.I.C.*, 788 F. Supp. 608, 610 n.4 (D. Me. 1992) (collecting cases and noting "state common law contract claims are not saved under the savings clause from pre-emption by ERISA"); *Brock v. Primedica, Inc.*, 904 F.2d 295, 297 (5th Cir. 1990) (quoting *Metro.*

*Life Ins. Co. v. Taylor*, 481 U.S. 58, 62 (1987)) (characterizing state-law claims as "common law of general application that is not a law regulating insurance"), *abrogated on other grounds by Geissal v. Moore Med. Corp.*, 524 U.S. 74 (1998)). Because Edwards relies on *Kelley* as part of a breach-of-contract claim, he cannot characterize *Kelley* as a law "specifically directed toward" the insurance industry.[4]

Second, *Kelley* is factually distinguishable from this case in two ways—the type of insurance policy and the reasons for cancelation. To the former, *Kelley* involved a personal life insurance policy rather than an employee-benefit plan. *See* 389 So. 2d at 921. To the latter, the insurance policy in *Kelley* gave the insurer the right to cancel the policy at its election if it gave sufficient notice. *See* 389 So. 2d at 321. The insurer used that right to cancel the policy when it found out about the insured's heart attack. *See id.* at 921. The Mississippi Supreme Court found that to be unconscionable because the insured had become uninsurable, and he could not have obtained desirable insurance. *Id.* at 922.

Guardian's policy, however, only gave it the right to cancel if either (1) "less than two employees [were] insured . . .; or" (2) "less than 75% of those employees who are eligible for insurance . . . are insured." [12-1] at 12. Consistent with that

---

[4] For the same reasons, Edwards cannot rely on *Franklin H. Williams Ins. Tr. v. Travelers Ins. Co.*, 50 F.3d 144, 151 (2d Cir. 1995) or *UNUM Life Ins. Co. of Am. v. Ward*, 526 U.S. 358 (1999). *See* [18] at 8–9. In *Williams*, the Second Circuit expressly contrasted the New York state statute at issue from laws that "provide general remedies for . . . breach of contract." *See* 50 F.3d at 151. And although *Ward* decided whether a California common-law rule was a law regulating insurance, the claim giving rise to the case was a claim for denial of disability benefits rather than for breach of contract. *See* 526 U.S. at

22

right, Guardian canceled Allure's policy because Allure fell below that required participation level, not because Mrs. Edwards presumably "became uninsurable." *See* [1-1]; [1-2]; *see also Kelley*, 389 So. 2d at 922. Edwards provides no evidence that Guardian was even aware of Mrs. Edwards's condition. And Guardian's right to cancel would not be unconscionable because, assuming Allure had the required number of employees, it could obtain a similar employee-benefit plan.

The parties raise no other exception to ERISA. Because the law-regulating-insurance exception does not apply to Allure's insurance policy, it is not excluded from ERISA's preemption. Edwards does not show a genuine dispute over whether ERISA preempts his state-law contract claim. For those reasons, the Court dismisses that claim with prejudice, and only his claim for benefits under ERISA will proceed.

## IV.    Conclusion

The Court has considered all arguments. Those not addressed would not have changed the outcome. For the stated reasons, the Court GRANTS Defendant Guardian Life Insurance of America's [12] Motion for Partial Summary Judgment and GRANTS IN PART AND DENIES IN PART its [23] Motion to Strike; and DENIES Plaintiff James "Jimmy" Emmett Edwards's [29] Motion for Leave to File Surrebuttal Brief and [30] Motion to Take Depositions. Edwards's claim for benefits under ERISA will proceed against Guardian. The parties should contact the

---

363–64.

magistrate judges' chambers within seven days to schedule the case management conference.

SO ORDERED, this the 9th day of August, 2023.

s/ *Kristi H. Johnson*
UNITED STATES DISTRICT JUDGE