UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF MISSISSIPPI
ABERDEEN DIVISION

JAMES "JIMMY" EMMETT EDWARDS                                              PLAINTIFF

V.                                              CIVIL ACTION NO. 1:22-CV-145-KHJ-MTP

GUARDIAN LIFE INSURANCE OF AMERICA                                       DEFENDANT

ORDER

Before the Court is Defendant Guardian Life Insurance of America's ("Guardian") [50] Motion for Summary Judgment. The Court grants the motion.

I.    Background

This case arises from Plaintiff James "Jimmy" Emmett Edwards's (Edwards) attempt to recover $85,000 in group life insurance proceeds following the death of his wife, Pam Edwards (Mrs. Edwards). *See* Compl. [1].

Mrs. Edwards owned and operated Allure Salon in Starkville, Mississippi. *See* Pl.'s Resp. [55] at 1; Admin. R. [43-1] at 91–92. In December 2007, Guardian issued Allure Salon a group life insurance plan that covered Mrs. Edwards and three other full-time salon technicians. *See* [43-1] at 105; *see also id.* at 91 (showing insurance application with Allure Salon as Planholder and coverage for four employees). "In subsequent years, new employees were added[,] and others were removed." Wiltrout Decl. [12-1] ¶ 12. "From January 15, 2015 through November 14, 2019, employee benefits were provided to three employees, including . . . [Mrs.] Edwards." *Id.* The plan's terms granted Guardian the right to cancel the plan on the

"policy anniversary date or premium due date" if "less than two employees are insured." [43-1] at 3.

Mrs. Edwards was diagnosed with cancer in 2019. [55] at 2. Later that year, in November 2019, she became the only participating employee under the group plan. *Id.* She still maintained the plan and pay monthly premiums. *See id.*

Then in 2020, the COVID-19 pandemic hit. *See* Def.'s Mem. in Supp. [51] at 3. Guardian chose to "suspend[] its practice of terminating plans that had dropped to one participant . . . from September 2020 through October 2021." *Id.* (citing [12-1] ¶ 20; [43-1] at 68–75). Once the suspension ended, Guardian mailed a prenotification of cancellation letter to Allure Salon and Mrs. Edwards. *Id.* (citing [43-1] at 168; Jansen Decl. [12-3] ¶¶ 4–5; [12-1] ¶ 21). Guardian sent a final cancellation letter on December 31, 2021, stating the "group plan is being cancel[ed] effective January 15, 2022" because of low group participation. *Id.* at 4 (citing [43-1] at 169); *see also id.* at 3. "After the Allure Group Plan had been cancel[ed], Guardian did not . . . receive any additional premiums from Allure [Salon]." *Id.* at 4 (citing [12-1] ¶ 23).

Mrs. Edwards passed away on May 27, 2022. [1] ¶ 4. At that point, Debbie Jaudon—the insurance agent who sold the group policy to Allure Salon—told Edwards that his wife had a life insurance policy. *See* Jaudon Aff. [17-2] at 2. Jaudon then "contacted Guardian to get a life claim form[, but] . . . they informed [her] the policy had been cancel[ed]." *Id.* Guardian then sent Jaudon the "cancellation notices that it claimed it had sent [Mrs. Edwards] before her death."

2

*Id.* Jaudon claims that she did not receive these cancellation notices before Mrs. Edwards's death and that "[i]n the insurance business, it is customary that an agent such as [Jaudon] will receive notice of any cancellation." *Id.*

On October 4, 2022, Edwards sued for state-law claims for insufficient notice and wrongful cancellation or, in the alternative, recovery of plan benefits under 29 U.S.C. § 1132(a). *See* [1] ¶¶ 9–12.

II. Procedural History

Guardian previously moved for partial summary judgment on Edwards's state-law claims, arguing ERISA preempted them. Def.'s Mem. Supp. Mot. Partial Summ. J. [13] at 1. The parties disagreed on whether the salon technicians were employees or independent contractors and whether ERISA applied. *See id.* at 1–10; Pl.'s Mem. Opp'n Mot. Partial Summ. J. [18]. The Court held that the technicians were employees and that the insurance policy was an ERISA-governed employee benefit plan. *See* Order Granting Partial Summ. J. [34] at 16 ("The circumstances show that the Guardian-issued life insurance policy is an ERISA plan."). It also held that, because ERISA preempted Edwards's state-law claims, "only his claim for benefits under ERISA [would] proceed." *Id.* at 23.[1]

Guardian now moves for summary judgment on Edwards's "remaining claim for benefits under ERISA." [50] at 1. The Court considers Guardian's motion below.

---

[1] In a subsequent Order, the Court allowed Edwards to conduct limited discovery related to his remaining ERISA claim. *See* [47].

3

III.    Standard

"Standard summary judgment rules control in ERISA cases." *Talasek v. Nat'l Oilwell Varco, L.P.*, 16 F.4th 164, 168 (5th Cir. 2021) (quotation omitted). Summary judgment is appropriate if the movant shows "no genuine dispute as to any material fact" exists, and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). "A fact is material if it 'might affect the outcome of the suit under the governing law,' while a dispute about that fact is genuine 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Owens v. Circassia Pharms., Inc.*, 33 F.4th 814, 824 (5th Cir. 2022) (citation omitted). The Court "view[s] the evidence introduced and all factual inferences from the evidence in the light most favorable to the party opposing summary judgment[, but a] party opposing summary judgment may not rest on mere conclusory allegations or denials in its pleadings." *Smith v. Reg'l Transit Auth.*, 827 F.3d 412, 417 (5th Cir. 2016) (quoting *Hightower v. Tex. Hosp. Ass'n*, 65 F.3d 443, 447 (5th Cir. 1995)).

IV.    Analysis

Only Edwards's claim under 29 U.S.C. § 1132(a)(1)(B) remains.[2] Because § 1132(a)(1)(B) does not allow recovery here, the Court grants Guardian's motion for summary judgment.

---

[2] Although Edwards cites generally to 29 U.S.C. § 1132 and 29 U.S.C. § 1132(a), he really seeks relief under 29 U.S.C. § 1132(a)(1)(B). His Complaint recites only the language of § 1132(a)(1)(B) as a basis for ERISA recovery. *See* [1] ¶ 12. Further, "[w]hen a beneficiary simply wants what was supposed to have been distributed under the plan, the appropriate remedy is [§ 1132](a)(1)(B)." *Hager v. DBG Partners, Inc.*, 903 F.3d 460, 469 (5th Cir. 2018) (quotation omitted). Edwards tries only to recover "what was supposed to have been distributed under the plan." *See id.; see also* [1] ¶ 12 (seeking recovery of "the policy proceeds

4

Section 1132(a)(1)(B) allows a plaintiff to bring a civil action "to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan." *Hager v. DBG Partners, Inc.*, 903 F.3d 460, 469 (5th Cir. 2018) (quoting 29 U.S.C. § 1132(a)(1)(B)). But that section does not allow recovery when "the plan no longer exist[s] and c[an] no longer function." *Id.* at 469 n.43 (quoting *McCormack v. Comput. Scis. Corp.*, 99 F. App'x 458, 463 (4th Cir. 2004)).[3]

Here, Guardian canceled the Allure Group Plan before Mrs. Edwards's death and before Edwards made a claim under the policy. Without a plan in existence, Edwards "has no claim for benefits under the plan." *Id.* at 465.

Still, Edwards seeks to recover benefits from the canceled plan alleging that Guardian (1) "waived its right to cancel the [p]lan for falling under the required participation level"; and (2) "did not properly provide notice and give [Mrs. Edwards] the opportunity to convert to individual life insurance as allowed by the plan." [55] at 5–6.[4] As explained below, these arguments do not prevent summary judgment.

---

of $85,000.00"); [55] at 5 ("Plaintiff is entitled to recover plan benefits."). The Court is therefore sure that Edwards seeks relief under 29 U.S.C. § 1132(a)(1)(B).

[3] *See also Maccarone v. Lineage L., LLC*, No. 17-212, 2018 WL 6579161, at *4 (M.D. La. Dec. 13, 2018) ("Plaintiff cannot bring a claim under Section 1132(a)(1)(B) because [the] . . . plan has been terminated."); *Hanson v. Wilcox Veterinary Clinic PLLC*, 596 F. Supp. 3d 742, 751 (E.D. Tex. 2021) ("Plaintiffs are no longer members of their former employer's plans because the plans no longer exist. Accordingly, any claim to recover those plan benefits is foreclosed under § 1132(a)(1)(B).").

[4] Edwards also argues that he is "entitled to recover plan benefits under 29 U.S.C. § 1132" because the Mississippi Supreme Court's decision in *Gulf Guaranty Life Insurance Co. v. Kelley*, 389 So. 2d 920 (Miss. 1980), "barred [Guardian] from terminating the Plan since Pam Edwards'[s] life was uninsurable." [55] at 5; *see also id.* at 3 (arguing that *Kelley*

A. Waiver

To begin, the parties do not dispute that the plan granted Guardian discretionary authority to determine benefit eligibility and an absolute right to cancel the policy in some cases:

> Guardian is the Claims Fiduciary with discretionary authority to interpret and construe the terms of the Policy, the Certificate, the Schedule of Benefits, and any riders, or other documents or forms that may be attached to the Certificate or the Policy, and any other plan documents. Guardian has discretionary authority to determine eligibility for benefits and coverage under those documents.
>
> . . . .
>
> [Guardian] ha[s] the right to cancel [the plan], or any coverage hereunder, on the policy anniversary date or premium due date, if, on that date, either:
> - less than two employees are insured under [the plan]; or
> - with respect to any contributory coverages, less than 75% of those employees who are eligible for insurance under [the plan] are insured.

[43-1] at 45; *id.* at 3; *see also* [55] at 2 ("The Plan allowed for Defendant to cancel the Plan if less than two employees were covered."). Edwards does not argue that the plan provisions are ambiguous. And he does not dispute that Guardian canceled the policy on the 2022 policy anniversary date for low group participation. Instead, Edwards argues that Guardian "waived its right to cancel the [p]lan for falling under the required participation level" when it "became aware that Pam Edwards

---

"imposed a law on insurers: regardless of the terms of an insurance policy, an insurer cannot cancel a policy once an insured has become uninsurable."). Edwards insists that *Kelley*'s holding constitutes a law regulating insurance and is therefore "not preempted." *Id.* at 5; *see also id.* at 2–4 (arguing *Kelley* falls within ERISA's savings clause). Edwards raised this same argument in response to Guardian's motion for partial summary judgment. *See* [18] at 6–9. The Court considered and rejected this argument in its prior Order. *See* [34] at 19–23. His argument fails here for the same reasons expressed in the Court's prior Order. *See id.*

6

was the only participating employee" at the end of 2019, yet "continued to accept premium payments for over two years before choosing to cancel the policy." [55] at 5. The Court disagrees with Edwards and finds that Guardian did not waive its right to cancel the plan.

"Waiver is the voluntary or intentional relinquishment of a known right." *Bunner v. Dearborn Nat'l Life Ins. Co.*, 37 F.4th 267, 273 (5th Cir. 2022) (quoting *Pitts By & Through Pitts v. Am. Sec. Life Ins. Co.*, 931 F.2d 351, 357 (5th Cir. 1991)). This circuit has "a clear dividing line as to when waiver claims are available" in the ERISA context. *Price v. Metro. Life Ins. Co.*, No. 2:04-CV-338, 2008 WL 4187944, at *3 (N.D. Miss. Sept. 8, 2008). "The key element is that waiver must be intentional." *Id.* (citing *High v. E-Sys. Inc.*, 459 F.3d 573, 581 (5th Cir. 2006)).

To support a showing of waiver, Edwards relies on the Fifth Circuit's opinion in *Pitts*, 931 F.2d 351 (5th Cir. 1991). In *Pitts*, the group health insurance policy "specified that the insured group must consist of at least ten employees; otherwise, [the insurer] could terminate the policy." *Id.* at 353. The group eventually dropped to only one employee. *See id.* at 357. The insurer knew this, yet it continued to provide coverage. *Id.* During that time, the employee became injured and filed a claim under the policy. *Id.* at 354. The insurer paid benefits on the claim and continued to accept premiums for five months before trying to terminate the policy for low group participation. *Id.* Indeed, the insurer had paid over $100,000 in benefits towards the employee's claim before it tried to halt payments and cancel the policy. *Id.* The Fifth Circuit viewed the insurer's actions as a "classic example of

7

waiver," which prevented the insurer from "assert[ing] a defense to its liability under the policy." *Id.* at 357.

*Pitts* does not support a finding of waiver here. There, the insurer's liability had attached before the attempted cancellation. *See id.* at 354. In other words, the employee had filed a claim under the policy before the insurer tried to cancel the plan. *Id.* And the insurer even made benefits payments before trying to cancel the plan. *See id.* Those circumstances supported a finding of waiver. *See, e.g.*, 1A Couch on Ins. § 8:42 (3d ed.) ("Courts have sustained awards to insureds based on . . . waiver of ineligibility defenses when the . . . insurer had . . . knowledge of the eligibility problem and accepted premium payments and failed to attempt to cancel the policy *until the insured filed a claim.*" (emphasis added)); *Otero v. Unum Life Ins. Co. of Am.*, 226 F. Supp. 3d 1242, 1272 (N.D. Ala. 2017) ("[C]ourts ha[ve] applied waiver . . . when 'the insurance company was attempting to reap an unjust benefit, e.g., accepting premiums after the insurer's defense to coverage was known and clear, thus giving the insurance company the option of keeping the premiums if beneficial to it or at its option returning the premium and cancel[ing] the policy when it was convenient to do so, *i.e., after a claim is made.*'" (emphasis added)).

That is not what happened here. Guardian canceled the policy months before Edwards tried to make a claim. *See* [43-1] at 169 (listing the effective date of cancellation as January 15, 2022); [55] at 2 (recognizing the attempted claim was made sometime after Mrs. Edwards's death on May 27, 2022).

8

When confronted with a similar issue in *Bunner*, the Fifth Circuit rejected the plaintiff's "attempt to expand the scope of [its] waiver analysis to include the defendants' [actions] made before [the plaintiff] . . . made a claim for benefits." 37 F.4th at 273; *see also id.* at 273–74 ("[T]his is not the equivalent of relinquishing a known right after [a plaintiff] agreed to a plan *and then brought a claim for benefits*." (emphasis added)). Expanding the court's waiver analysis would "impermissibly blur[] the line between estoppel and waiver." *Id.* at 274.

The Court applies the *Bunner* reasoning and finds that Guardian did not waive its right to cancel the group plan when it did so per the plan's terms and before Edwards brought a claim for benefits.

B. Notice

Edwards argues that "Guardian's cancellation was [a]n improper exercise of its rights under the plan since it did not properly provide notice." [55] at 6. According to him, Mrs. Edwards "was the last remaining member of the policy, and . . . her condition had worsened to the point that it impaired her ability to function, [so] it is unlikely that she received those notices." *Id.*[5] This argument does not preclude summary judgment on Edwards's § 1132(a)(1)(B) claim for at least two reasons. First, Edwards does not point to a provision in the group plan entitling him to benefits for improper or untimely notice. *Holman v. Life Ins. Co. of N. Am.*, 533 F. Supp. 3d 502, 505 (S.D. Tex. 2021) ("A plaintiff suing under [§ 1132(a)(1)(B)] bears

---

[5] The Court notes that Edwards cites no legal authority to support his notice argument.

9

the burden of proving his entitlement to contractual benefits." (quoting *Horton v. Reliance Std. Life Ins. Co.*, 141 F.3d 1038, 1040 (11th Cir. 1998))). Second, even if Edwards had identified a plan provision, there is no genuine fact issue as to whether Guardian mailed a cancellation notice.

Indeed, the record overwhelmingly supports a presumption that Guardian mailed the cancellation notice. "A letter properly addressed, stamped[,] and mailed may be presumed to have been received by the addressee in the due course of the mail." *Wells Fargo Bus. Credit v. Ben Kozloff, Inc.*, 695 F.2d 940, 944 (5th Cir. 1983) (citation omitted). "A threshold question for [applying this] rule is whether there is sufficient evidence that the letter was actually mailed." *Custer v. Murphy Oil USA, Inc.*, 503 F.3d 415, 419 (5th Cir. 2007). "Placing letters in the mail may be proved by circumstantial evidence, including customary mailing practices used in the sender's business." *Wells Fargo Bus. Credit*, 695 F.2d at 944 (citation omitted). While "[e]vidence of non-receipt can be used to establish that the notice was never mailed," a "bare assertion of non-receipt [cannot] create a genuine issue of material fact to survive summary judgment." *Custer*, 503 F.3d at 420–21.

Guardian offers substantial evidence to support the presumption that it mailed notice of cancellation to Mrs. Edwards. To begin, Guardian offers the October 28, 2021, and December 31, 2021, notification letters addressed to Mrs. Edwards and Allure Salon at the address on record. [43-1] at 168–69; *see also* [51] at 9.

10

Guardian then offers the Declaration of "Rebecca J[a]nsen, a Team Leader in Support Assistance[,] which is [the group] responsible for mailing the two notice of cancellation letters to [Mrs.] Edwards." Def.'s Reply in Supp. Partial Summ. J. [26] at 11; *see also* [50] at 2; Def.'s Reply [57] at 13 (adopting and incorporating document [26] by reference). Jansen's Declaration details the standard procedure followed for creating and mailing the two cancellation notices:

> When a policy is cancel[ed], the underwriting department notifies the cancellation department. The cancellation department generates the letters and saves them and uploads them into a shared file on a shared drive on Guardian's computer network. My team then uploads them through a website portal to a third[-]party vendor who undertakes the task of printing the letter and envelope and mailing the letter. Through the website portal for our account, we are able to track when the letter was mailed. Any items that are returned as non-deliverable[,] we have a sharepoint site that tracks the mail and we process and work to find new addresses.

[12-3] ¶ 4; *see also id.* ¶¶ 5–8. Jansen testified that "Guardian's pre-notification letter was mailed" on October 28, 2021, to Mrs. Edwards's address on record, and "Guardian's December 31, 2021, notice of cancellation was sent to [Mrs.] Edwards at the same address on January 5, 2022." *Id.* ¶¶ 5–6. Jansen attaches to her Declaration "a screen[]shot of the vendor's record of mailing letters for Guardian on January 5, 2022, which included the December 31 notice of cancellation." *Id.* ¶ 6. The screenshot "shows the order was placed on January 3, the postage was 56 cents, the letter was inserted into the envelope by hand[,] and the letter was mailed through the United States Postal Service." *Id.* To determine whether either letter was returned as undeliverable, Jansen "reviewed [the] internal sharepoint site" but

11

found that "[n]o letters associated with Group No. 744345, Allure Salon's group number, have ever been returned." *Id.* ¶ 7.

Next, Guardian offers the Declaration of Melanie Wiltrout, the Appeals Leader at Guardian. [50] at 1; *see also* [12-1] ¶ 3. Among other things, Wiltrout stated that Guardian sent the October 28, 2021, pre-notification letter and the December 31, 2021, cancellation letter to Mrs. Edwards at the address of record. [12-1] ¶ 21. She also testified that "[b]ecause the . . . policy anniversary date was January 15, [the letters] advised [Mrs. Edwards] that the Group Plan was being cancel[ed] effective January 15, 2022." *Id.* Wiltrout added that Guardian "received no additional premiums from Allure [Salon]" after the January 15, 2022, cancellation date. *Id.* ¶ 22.

And finally, Guardian offers the internal computer notes logged for the Allure Salon group policy:

```
Note Content
10/28/21 * GRP SCHEDULED TO BE XLLD 1/1/22 DUE TO BELOW MINIMUM PARTICIPATION
NOTIFY UW PRIOR TO ADDING EES PRENOTIFY LETTER SENT.
ANY QUESTIONS REACH OUT TO UW.
12/29/21 *XLL PID #127283595
12/29/21 GROUP TERMINATED 01/15/22 REASON: BP        GGLMGRU0
12/31/21 *FINAL LETTER SENT - $00.00 FINAL BALANCE - KKERBACHER
12/31/21 *FILE CLOSED - KKERBAHCER
06/14/22 * SR PL PID# 136673599 - GRP ASKING WHEN THEY BECAME BELOW PARTICIP-
ATION - ADVISED THIS NEEDS TO GO TO UNDERWRITING AS WE RECEIVE AN
EMAIL & LIST FROM THEM TO TERM THE GROUPS FOR BELOW PART - ETAYLOR
08/02/22 *RECEIVED EMAIL FROM JULIE MARTIN - ABOUT AN INSURANCE COMPLAINT
WANTS TO KNOW WHO TOLD US TO CANCEL THE PLAN FOR BMP AND A COPY OF
BOOKLET - GAVE HER VICKY CLAYTON AS THE UNDERWRITER WHO TOLD US TO
CANCEL AND SENT COPY OF BOOKLET - KKERBACHER
05/22/23 *RECEIVED EMAIL FROM AMANDA CARPENTER - THIS IS REMINDER DO NOT
DESTROYED ANY PAPERWORK - KKERBACHER
```

Def.'s Rep. to Request for Prod. [50-1] at 7. Guardian points to the October 28, 2021, entry showing "PRENOTIFY LETTER SENT" and the December 28, 2021, entry showing "FINAL LETTER SENT." *See* [51] at 12 (citing [50-1] at 7).

12

As for Edwards, he offers little evidence to support that Guardian did not send a notice of cancellation to Mrs. Edwards. He offers only one piece of evidence—the affidavit of Debbie Jaudon, the insurance agent who sold the group policy to Mrs. Edwards. [55] at 6 (referencing Jaudon's testimony from [17-2] that in the normal insurance practice, the agent would have received a copy of any cancellation notice). According to Edwards, Jaudon's non-receipt of the cancellation notices creates a genuine issue of material fact "as to whether . . . the notices of cancellation were actually sent." *See id.*[6] But Edwards cites no plan provision requiring Guardian to send these notices to the insurance agent who sold the policy. And he offers no legal authority to support such a requirement without express plan language. Aside from Jaudon's affidavit, Edwards provides no evidence that Guardian did not mail notice of the plan's cancellation to Mrs. Edwards.

Having viewed all the evidence in a light most favorable to Edwards, the Court finds no genuine issue exists as to whether Guardian mailed a notice of cancellation to Mrs. Edwards. Guardian's evidence offers "sufficient proof to create a presumption that it mailed the [notice]." *See Cash v. AXA Equitable Life Ins. Co.*, 229 F. Supp. 3d 542, 550 (W.D. Tex. 2017) (evaluating and finding as sufficient similar evidence consisting of "job and report numbers, testimony from witnesses as to the mailing process on the specific date at issue, and the electronic copy of the . . .

---

[6] Edwards also argues that because Mrs. Edwards "was the last remaining member of the policy, and [] her condition had worsened to the point that it impaired her ability to function, it is unlikely that she received those notices." [55] at 6. Edwards offers no record evidence or legal authority. *Id.* This "bare assertion of non-receipt [does not] create a genuine issue of material fact to survive summary judgment." *Custer*, 503 F.3d at 421; *see also Faciane v. Sun Life Assurance Co. of Can.*, 931 F.3d 412, 421 (5th Cir. 2019).

13

[n]otice"). Edwards's allegation that the insurance agent (Jaudon) did not receive a cancellation notice does not rebut this point. Indeed, Jaudon's declaration that she did not receive the notices does not create a genuine dispute of material fact as to whether Guardian sent the notices to Mrs. Edwards. *See Faciane*, 931 F.3d at 420 ("[P]roof that a letter properly directed was placed in a U.S. post office mail receptacle creates a presumption that it reached its destination in the usual time and was actually received *by the person to whom it was addressed*." (emphasis added)).

Because Edwards offers insufficient evidence to rebut the presumption, the Court finds that no genuine issue of material fact exists as to whether Guardian mailed notice of the group plan's cancellation to Mrs. Edwards. *See Faciane*, 931 F.3d at 421 (affirming grant of summary judgment when there was "substantial evidence buttressing the presumption of receipt and only ineffectual rebuttals").

V.     Conclusion

The Court has considered all arguments. Those not addressed would not have changed the outcome. For the stated reasons, the Court GRANTS Guardian Life Insurance of America's [50] Motion for Summary Judgment. The Court will issue a final judgment consistent with this Order.

SO ORDERED, this 12th day of July, 2024.

s/ *Kristi H. Johnson*  
UNITED STATES DISTRICT JUDGE